IN THE MATTER OF DOWDY.

(SUPREME COURT DISCIPLINARY NOS. 45, 54)

PER CURIAM.

These cases involve two disciplinary proceedings against Larry W. Dowdy, an attorney practicing law in McRae, Telfair County, Georgia. The State Disciplinary Board has recommended that case number 45 be dismissed and that respondent be indefinitely

suspended from the practice of law in case number 54. We will consider the second case first.

Case number 54 involves charges that respondent violated Standards 61, 62, 63 and 65 of State Bar Rule 4-102 (241 Ga. 721, 741) by failing to properly hold and account for a client's funds held in trust.

The matter commenced in the spring of 1977 when respondent was retained as closing attorney by Mr. and Mrs. Randall Adams in the purchase of property in Telfair County from the unprobated estate of Clyde Browning. The purchase was to be made by Mr. and Mrs. Adams (Mrs. Adams was Mr. Browning's grandchild) by financing it through the First Federal Savings & Loan Association of McRae, Georgia. Upon checking the title to the property, respondent found several liens and that the property was still titled in Mr. Browning, who had died intestate, so that an order from the probate court that no administration was necessary was required to clear title and secure title insurance.

At the closing in May, 1977, First Federal issued checks payable to the lienholders, to the borrowers and an additional check for $1,585.39 involved in the instant disciplinary proceeding. The additional check was made payable to Mrs. Owen Scarborough (Mr. Browning's surviving child) and two of Mr. Browning's grandchildren by a child then deceased. It was agreed that the payees would endorse the check to respondent who would hold it in escrow until certain expenses were satisfied, including the petition for no administration necessary. It was decided by respondent and Mrs. Scarborough's attorney that respondent would file the petition for no administration necessary and receive $300.00 as attorney fees. Mrs. Scarborough did not discuss the matter with respondent. She did however endorse the check and respondent deposited it into his escrow account. Respondent prepared the necessary documents to obtain an order of no administration necessary but Mrs. Scarborough, for no clear reason, failed to sign the verification.

Within a few months after endorsing the check, Mrs. Scarborough began complaining to respondent that she had not received her portion of the money. The record is not clear exactly how many times she complained or when those complaints were made, but the record is clear that she complained on several occasions.

Though the petition for no administration had not been filed, respondent executed and delivered a $1,585.39 check on April 18, 1978, drawn on his escrow account payable to Mrs. Scarborough's attorney. This check was subsequently dishonored for insufficient funds but after Mrs. Scarborough filed a "Memorandum of Complaint" on these facts with the State Bar on June 20, 1978,

respondent borrowed sufficient money to satisfy the indebtedness. After receipt of the money, Mrs. Scarborough sought to withdraw her complaint but the State Disciplinary Board nonetheless voted to continue investigation into the charges.

The State Disciplinary Board made a finding of probable cause that respondent had violated Standards 61, 62, 63 and 65 of Bar Rule 4-102, supra, a formal complaint was filed, and a special master was appointed. After hearing, the special master found the respondent in violation of Standards 63 and 65 of Rule 4-102 on the merits, but found no violation of 61 or 62. The special master made no recommendation as to the discipline to be imposed.

Standard 63 provides as follows: "A lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and promptly render appropriate accounts to his client regarding them. A violation of this standard may be punished by disbarment." Regarding this standard, the special master found as follows: "With respect to Standard 63, the conclusion is inescapable that Respondent Dowdy has violated that portion thereof which requires a lawyer to maintain complete records of all funds, securities, and other properties of a client coming into his possession. Respondent Dowdy had no records during the period of time here in question from which it could be ascertained which clients had a credit in his escrow account, or how much credit any particular client might have had. His records were maintained in such fashion that it was impossible for him to tell at any given moment whether there were sufficient funds in his escrow account to cover the obligations due his clients. Accordingly, this standard has been violated in the particulars herein specified."

Standard 65 provides as follows: "A lawyer shall not commingle his client's funds with his own and shall not fail to account for trust property, including money and interest paid on the client's money, if any, held in any fiduciary capacity. A violation of this standard may be punished by disbarment." Regarding this standard, the special master found as follows: "With respect to Standard 65, the record demands the conclusion that this has been violated by Respondent Dowdy. He commingled his client's funds with his own personal funds, and did not properly account for funds held in a fiduciary capacity. The record demonstrates to a mathematical certainty that he did improperly use the funds in his escrow account because, on numerous occasions during the period here in question, there was considerably less in the escrow account than the $1,585.39 obligation which is the subject-matter of this case. This was a violation of a fiduciary obligation, regardless of any attorney-client relationship. The fact that the money here in question was subsequently repaid is

something which could be considered in mitigation of the offense, but it does not alter the fact that the offense itself was complete on the first occasion that the amount in the escrow account fell below the figure of $1,585.39. In this connection, see *State Bar of Georgia v. Ellis,* 116 Ga. App. 721 [(158 SE2d 280) (1967)]. The fact of the necessity for borrowing this money to make the repayment is conclusive proof that it could not have been paid from the escrow account in which it had been deposited because it was no longer there."

The State Disciplinary Board adopted the special master's report and by unanimous decision recommended that respondent be indefinitely suspended from the practice of law.

On appeal, the respondent enumerates several errors.

1. Respondent contends the evidence was insufficient to prove that Mrs. Scarborough was his "client" within the meaning of Standards 63 and 65. These standards place certain duties on a lawyer in relation to a "client," and respondent contends that Mr. and Mrs. Adams were his clients and that he owed no duties to Mrs. Scarborough because she had never talked to him, she refused to sign the papers he prepared, and thus she was not his "client."

Generally, the relation of attorney and client is a matter of contract but the contract may be express, or implied from the conduct of the parties. The employment is sufficiently established when it is shown that the advice or assistance of the attorney is sought and received in matters pertinent to his profession. 7 AmJur2d 187-188, Attorneys at Law, § 118; 7A CJS 249, Attorney & Client, § 169. The special master found that respondent had been engaged by Mrs. Scarborough's attorney to file the petition for no administration necessary, was to receive specific compensation therefor, and had prepared documents identifying himself as her attorney. Mrs. Scarborough endorsed the check and respondent deposited it with the understanding that necessary payments, including his fee, would be made from it on her behalf to render title marketable. An attorney cannot agree to perform legal services for a person, accept funds and fee therefor, undertake the service and then deny that such person was a client as to those funds. It is clear that respondent agreed to prepare and file the petition for no administration and that this was a matter related to the respondent's profession. See Code Ann. § 9-401. Although Mrs. Scarborough later failed to verify the petition prepared by respondent, this failure is insufficient to show that he had not been engaged as her representative in this matter. The requisite attorney-client relationship existed between respondent and Mrs. Scarborough so as to make Standards 63 and 65 applicable to the funds entrusted by her to respondent.

2. Respondent contends the special master misconstrued Standards 63 and 65 by requiring proof of only one of the two elements in each standard.

Both Standards 63 and 65, supra, are stated in the conjunctive. Standard 63 directs lawyers to (1) maintain complete records of client funds *and* (2) promptly render appropriate accounts to his clients. Standard 65 prohibits lawyers from (1) commingling client funds with his own *and* (2) failing to account for trust property held in any fiduciary capacity.[1]

Respondent argues that the special master erroneously interpreted these Standards to allow discipline against an attorney where only one, rather than both, of the elements set out in the Standards were shown.

The Code of Professional Responsibility, like a statute, should be construed so as to carry into effect the intent of the governing body which enacted it. See *Lewis v. City of Smyrna,* 214 Ga. 323, 326 (104 SE2d 571) (1958). The construction given should be in harmony with the policy of the law and must square with common sense and sound reasoning. See *Blalock v. State,* 166 Ga. 465, 470 (143 SE 426) (1928).

We read Standard 65 to require not only that the lawyer promptly render appropriate accounts to the client, as is required by Standard 63, but also to promptly deliver trust property as is required by Standard 61. Upon consideration of the language in Standards 63 and 65 and the purposes for which they were intended, it is clear that lawyers are required not only to maintain complete records of client funds (Standard 63) and not to commingle client funds with their own (Standard 65), but also to render accounts to the client (Standards 63 and 65) and to return trust property to the client as required by law or contract (Standard 65).[2] An attorney is ethically required to perform both halves of each Standard, and the failure to satisfy either half subjects the attorney to disciplinary action. Any other interpretation would lead to the untenable conclusion that an attorney can refuse to render appropriate accounts to a client, yet escape disciplinary action because he has maintained complete records of client funds (Standard 63), or can fail to account for trust property so long as he does not commingle clients' funds with his own (Standard 65).

---

[1] The second part of Standard 65 may be applicable to trust property held "in any fiduciary capacity," irrespective of an attorney-client relationship, but we do not need to decide that question here in view of our finding in Division 1.

[2] As we read the record, the special master found violation of both parts of Standard 65.

3. Respondent contends the evidence is insufficient to support a violation of Standards 63 or 65 because he was clearly under no obligation to pay the funds held in trust until he obtained an order of no administration necessary. The record shows that respondent was to obtain such an order before he was under a legal duty to disburse any of the funds held in trust by him, but this fact does not preclude disciplinary action.

These Standards are applicable during the period of time an attorney is holding client funds; their applicability is not limited to the time when the funds must be disbursed.

It is undisputed that respondent failed to maintain the required records and that there were many occasions during the relevant time period in which the balance in respondent's escrow account was less than $1,585.39, and even less than $1,285.39 (the figure remaining after subtracting the respondent's $300.00 fee for handling the no administration necessary). In fact the escrow account went to zero more than once. In addition, respondent admitted he used funds from this account to pay his office and personal expenses and that from time to time he deposited his personal funds into the escrow account; i.e., respondent admitted commingling. See DR 9-102A. When respondent's check bounced for insufficient funds, he failed to deliver trust property as required by Standard 65 whether or not repayment was legally required at that time. The evidence was sufficient to show violation of both Standards. The fact that repayment was not yet required under the arrangements made by the parties does not reduce the respondent's legal obligation to comply with Standards 63 and 65 while holding those funds.

4. Respondent contends the indefinite suspension recommended by the State Disciplinary Board is excessive in light of the special facts of this case. Specifically, he notes that the complainant has been fully compensated for the relatively small sum involved and has no desire to pursue the matter, that little attention was given to the question of guilt or discipline at the hearing and that the special master made no recommendation. He contends an indefinite suspension will create great present hardship and permanent injury to his reputation.

In arriving at the punishment to be imposed, precedents are of little aid, and each case must be largely governed by its particular facts and the matter rests in the sound discretion of the court. The question is not what punishment may the offense warrant, but what does it require as a penalty to the offender, a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession. 7A CJS 117, Attorney & Client, § 116.

Insofar as precedents are concerned, attorneys have been

suspended under similar circumstances in a number of Georgia disciplinary proceedings. See, *In the Matter of Baldwin,* 246 Ga. 344 (271 SE2d 626) (1980) (attorney indefinitely suspended for failure to notify client of receipt of proceeds of a real estate sale for almost four and one-half months and, even then, his check was returned for insufficient funds); *In the Matter of Byars,* 245 Ga. 830 (268 SE2d 155) (1980) (attorney indefinitely suspended for admitted misappropriation of funds while serving in a fiduciary capacity although alcohol addiction was alleged as a mitigating circumstance); *In the Matter of Barron,* 246 Ga. 327 (271 SE2d 474) (1980) (attorney suspended for minimum of two years for borrowing client's settlement proceeds held in escrow despite substantial extenuating circumstances); *In the Matter of Ellis,* 241 Ga. 395 (245 SE2d 658) (1978) (attorney disbarred without objection for failing to notify client that settlement proceeds had been received and intentionally failing to promptly deliver the funds received).

The confidence of the public that lawyers will handle client funds properly is essential to the functioning of the legal profession. Standards 63 and 65 each prescribe disbarment as an appropriate disciplinary sanction for their violation. The fact that the complainant was ultimately repaid and sought to withdraw her complaint may explain why the Disciplinary Board did not recommend disbarment. As was said by the Supreme Court of New Jersey, "Banks do not rehire tellers who 'borrow' depositors' funds." Matter of Wilson, 81 N. J. 451 (409 A2d 1153) (1979).

As respondent points out, indefinite suspension means suspension for at least a year (Rule 4-304). It also means that the suspended attorney must petition the State Disciplinary Board for reinstatement (Rule 4-301). If, after the lapse of one year, the suspended attorney can justify reinstatement, his license to practice will be restored. If he cannot justify reinstatement, then reinstatement would not be appropriate.

We therefore approve the recommendation of the State Disciplinary Board in case number 54 that respondent be suspended indefinitely. In light of this determination, we approve the recommendation of the Board that the charges in case number 45 be dismissed.

It is so ordered. All the Justices concur.

DECIDED APRIL 16, 1981.

*Omer W. Franklin, Jr., General Counsel State Bar, James E. Spence, Jr., Assistant General Counsel State Bar, Viola L. Sellers, Assistant General Counsel State Bar,* for State Bar of Georgia.