## S97Y0837, S97Y0838, S97Y1037. IN THE MATTER OF JAMES M. FINLEY.
### (488 SE2d 74)

PER CURIAM.

These disciplinary cases involve three separate proceedings against James M. Finley in which the State Bar brought formal complaints alleging multiple violations of professional standards. The violations include making false statements, employing a disbarred attorney to engage in the unauthorized practice of law, abandoning legal matters, and commingling and mismanaging client funds. In each of these cases the special master held a hearing and made findings of fact, all of which were adopted by the review panel, and which we are bound to uphold, there being evidence to support them.[1] In light of the gravity of the infractions, and other aggravating factors including Finley's prior disciplinary matter, we order Finley disbarred.

1. Case No. S97Y0837

This case involves Finley's representation of a client regarding a workers' compensation claim. In its complaint the Bar alleged violations of Standards 4 (engaging in professional conduct involving dishonesty, fraud, deceit, or wilful misrepresentation); 22 (b) (withdrawal from employment without taking reasonable steps to avoid foreseeable prejudice to the client's rights); 24 (aiding a non-lawyer in the unauthorized practice of law); 44 (wilful abandonment or disregard of a legal matter); and 45 (knowingly engaging in illegal conduct or conduct contrary to a disciplinary rule) of Bar Rule 4-102 (d).

Following an injury at work, the client saw an attorney who referred the client to Finley. The client met with Finley and Oddie Richard,[2] an attorney disbarred in 1989, working with Finley. The

---

[1] *In the Matter of Morse*, 265 Ga. 353 (456 SE2d 52) (1995).

[2] *In the Matter of Richard*, 259 Ga. 311 (380 SE2d 52) (1989). Richard was disbarred for

client executed a fee agreement in Finley's office. Most of the client's dealings with personnel at Finley's office were with Richard, and the client believed Richard and Finley were his attorneys. No one in Finley's office ever told the client that Richard was or was not an attorney. Richard had the client execute a release of information form and instructed the client to keep appointments with his doctor, and to stay in touch with Richard. Finley sent a letter requesting the client's medical records. At some point Richard told the client he had what was needed to pursue the case and told the client to check back in a few months. Later, he told the client there was nothing that could be done for him. Finley failed to file a workers' compensation claim within the one-year statute of limitation, failed to inform the client of that statute of limitation, and did not give the client sufficient notice that he was not going to represent him so that the client could avoid losing his right to file a claim.

The review panel, while adopting the special master's findings of fact, nevertheless rejected the special master's conclusion that the State Bar had established an attorney-client relationship in this case. The special master, in finding such a relationship, noted the fact that the client's name was listed in Finley's records containing the names and addresses of clients, the numerous times the client went to see Finley, the fee agreement the client executed, Finley's request for the client's medical records, and the circumstances of the client's initial meeting with Finley.[3] We agree with the special master's conclusion that there is ample evidence under the current "beyond a reasonable doubt" standard of Bar Rule 4-221 (e) that the client sought and received advice from Finley, and from Finley's employee Richard, in matters pertinent to Finley's profession so that an attorney-client relationship is implied. *In the Matter of Weber*, 266 Ga. 883, 885 (471 SE2d 864) (1996); *In the Matter of Dowdy*, 247 Ga. 488, 491 (277 SE2d 36) (1981).

Because of the review panel's erroneous conclusion that an attorney-client relationship did not exist in this case, the review panel rejected the special master's conclusions that Finley violated Standards 22 (b), 44 and 45. However, we agree with the special master that Finley violated these professional standards by failing to take reasonable steps to avoid prejudice to the client's rights, by failing to give the client notice so that the client could avoid the running of the statute of limitation, by failing to take action on the client's behalf for

___

failing to promptly give proceeds of settlement funds to his clients and failing to comply with the Bar's requests for records.

[3] In his answer to the State Bar's complaint in this case Finley defended on the basis that the client's workers' compensation claim was groundless, and at the hearing Finley denied he agreed to represent the client.

over a year, and by allowing a non-lawyer to manage the client's case. In addition, and contrary to the conclusion of the review panel, we find that Finley violated both Standards 4 and 24 by allowing a non-attorney to manage the client's case, by failing to inform the client that he was dealing with a non-lawyer, and by failing to notify the client of the statute of limitation.

2. Case No. S97Y0838

In this case, the State Bar in its complaint against Finley alleged the following violations of professional standards of Bar Rule 4-102 (d) in connection with a client and her minor daughter regarding injuries they received in a traffic accident: 61 (failure to promptly notify a client on receipt of client funds and failure to promptly deliver those funds); 63 (failure to maintain records of client funds and render prompt accounts to the client); 65 (D) (failure to adequately maintain trust accounts and improper use of trust account funds); and 45 (knowingly engaging in conduct contrary to a disciplinary rule). The special master granted the Bar's motion to amend the complaint to add allegations of violations of Standard 65 (A) (commingling client funds with his own) and further violations of 65 (D). When Finley did not file an answer by the date ordered, the special master granted the Bar's motion for default judgment with respect to the amended portions of the complaint.

The client in this case employed Finley to represent her and her daughter regarding injuries they had received in an automobile accident about a week earlier. The client spoke initially with Oddie Richard, the disbarred attorney employed by Finley, and dealt primarily with Richard regarding the case. The client agreed to a fee arrangement whereby Finley would receive one-third of the proceeds of any award or settlement. The client moved to Texas and promptly informed Finley of her move. Thereafter, Finley telephoned the client, who authorized Finley to settle her claims and those of her daughter. Finley informed the client he would send her certain paperwork and that the claim would be settled within a few days. He received a settlement check on behalf of the client and her daughter, and deposited that check in his escrow account. Several months later one of Finley's employees called the client and told her she noticed the client had not signed a release of her claims. Thereafter, a Finley employee faxed the client a release which she executed and faxed back. The client called Finley on several occasions but he did not respond, and she heard nothing from him until she filed a grievance with the State Bar.

After Finley received the Bar's notice of the client's grievance, he called her and said he did not know she did not receive the settlement proceeds and that someone had stolen the money that was to have been sent to her. Finley testified that when he received the

settlement check he did not want to issue an escrow account check because the client was in Texas. He sent someone from his office with cash with instructions to deposit the cash and obtain a cashier's check for the client, which, apparently, never happened. After the client's grievance, and his telephone conversation with her, Finley wire-transferred the amount owed her. During the time of the events in this case, Finley did not have adequate records showing the amount of funds held for respective clients. Also, he had debits for charges to his escrow account for insufficient funds on numerous occasions over a two-year period. The special master noted that although Finley stated the funds he wire-transferred to his client were personal funds from fees he had earned, his bank statements for that month did not corroborate that assertion.

We agree with the review panel that Finley's conduct in this case violated each of the professional standards alleged by the State Bar.

3. Case No. S97Y1037

In this case the State Bar in its complaint alleged Finley violated the following professional standards in connection with his representation of a client regarding her personal injury claim arising out of an accident: Standards 4 (engaging in professional conduct involving dishonesty, fraud, deceit, or wilful misrepresentation); 31, and in particular 31 (d) (2) (failing to provide a written statement to the client at the conclusion of a contingent fee matter, which statement set forth the outcome, the remittance to the client, the method of determination of the remittance, and the amount of the attorney's fee); 61 (failure to promptly notify a client on receipt of client funds and failure to promptly deliver those funds); 63 (failure to maintain records of client funds and render prompt accounts to the client); 65, particularly 65 (A) (commingling client funds with the lawyer's personal funds) and 65 (D) (failure to adequately maintain trust accounts and improper use of trust account funds); and 45 (knowingly engaging in illegal conduct or conduct contrary to a disciplinary rule).

The client employed Finley following an automobile accident in which she was injured. She agreed to a contingency agreement whereby Finley would receive one-third of any award or recovery. Finley did not prepare a written contract. He settled the case for the client and sent her a check for a portion of the settlement funds but did not provide a statement showing disbursements, including those for her medical providers. Finley wrote several checks to the client's providers, which checks were returned for insufficient funds. He received statements for his escrow account and reviewed those statements. Despite the fact that he was aware several checks in the previous month had been returned for insufficient funds, he nevertheless sent a check to another provider, which check was returned for insufficient funds. The client filed a grievance with the State Bar

after one of her medical providers contacted her for payment. Finley did not pay the client's medical providers for approximately three or four months after he received the settlement funds on behalf of his client. We agree with the review panel's conclusions, based on those of the special master, that Finley violated all the professional standards as alleged by the State Bar in this case with the exception of Standard 61, because he did make a timely disbursement to his client.

4. Sanction

We agree with the review panel that disbarment is the appropriate sanction in Case Nos. S97Y0838 and S97Y1037. Also, and contrary to the review panel, we find disbarment appropriate in Case No. S97Y0837. In determining the sanction to impose, we are guided by the ABA Standards for Imposing Lawyer Sanctions (1991), and look to the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating circumstances. ABA Standard 3.0. Finley's violations include the failure to preserve the client's property, lack of diligence, failure to maintain personal integrity, and false statements and misrepresentations. Most of the standards Finley violated are punishable, in themselves, by disbarment. While it is difficult to determine what motivated Finley's misconduct, at least some of his violations, particularly his use of a non-lawyer to perform legal work for his clients, were, at the very least, unethical. The injuries to Finley's clients in these cases range from inconvenience to the loss of a cause of action. We find no mitigating factors, but numerous aggravating factors. First, there is Finley's history of disciplinary infractions, involving, as here, the failure to account properly for client funds and the issuance of bad checks.[4] Other aggravating factors include: a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of his conduct, substantial experience in the practice of law, and indifference to making restitution. ABA Standard 9.22 (a), (b), (c), (d), (g), (I), and (j).

For the above reasons, James M. Finley is disbarred from the practice of law in this state. He is reminded of his duties under Bar Rule 4-219 (c).

*Disbarred. All the Justices concur, except Benham, C. J., who dissents in Case No. S97Y0837.*

BENHAM, Chief Justice, concurring in part and dissenting in part.

Because I disagree with the rejection of the review panel's recommendation in Case No. S97Y0837, I must dissent from that por-

---

[4] *In the Matter of Finley*, 258 Ga. 408 (370 SE2d 749) (1988).

tion of the majority opinion. I concur, however, with the resolution of Case Nos. S97Y0838 and S97Y1037. I write separately to point out State Bar programs available to assist lawyers in managing their law practices.

1. Case No S97Y0837

Unlike the majority opinion which rejects the recommendation of the review panel, I would adopt the recommendation of the review panel which found that no attorney-client relationship existed; therefore, no violation of Standards 4, 22 (b), 24, 44 and 45 occurred. Only in clear and unmistakable cases should this Court substitute its judgment for that of the review panel. Such is not the case here, so I must respectfully dissent.

2. Case Nos. S97Y0838 and S97Y1037

While I agree with the majority opinion that disbarable offenses have occurred in the above-mentioned cases, I write separately to express a concern for lawyers who run afoul of bar rules due not to their incompetence as lawyers, but due to their lack of familiarity with proper business practices and management techniques and their inattention to detail in the operation of their law offices.

All too often lawyers find themselves embroiled in disciplinary proceedings because they have undertaken the representation of a client without fully investigating the matter, taken on too many cases without proper backup staff, failed to keep in contact with their clients, procrastinated in the handling of a legal matter, failed to timely respond to discovery requests, failed to appear in court on behalf of their clients, failed to respond to bar complaints, failed to properly account for client funds, failed to separate client funds from their own funds, and failed to keep proper records of their transactions, just to name a few problems caused by inattention to detail in the practice of law. These lawyers may have an excellent knowledge of the law, but they fail to familiarize themselves with the ethical and professional requirements necessary for a successful practice. In addition, they fail to acquaint themselves with proper business practices in the operation of a law office.

Unfortunately, too many lawyers are unfamiliar with the many programs offered by the State Bar of Georgia to assist lawyers in the operation of a successful law office, and they fail to inquire about available programs before a crisis occurs. As a result, they often find themselves facing disciplinary actions over matters easily avoidable by simply taking advantage of programs offered by the State Bar of Georgia. Such is maybe the case here.

In hopes that similar situations will be avoided in the future, I outline below helpful programs provided by the State Bar of Georgia to assist lawyers:

A. *Ethics School* — This school was established in 1996 to provide educational opportunities to help lawyers avoid serious disciplinary actions. The course identifies problem areas for lawyers and teaches them practice methods that will prevent disciplinary problems. The course includes the following topics: establishing a lawyer/client relationship, setting fees, maintaining confidences/secrets, responding to grievances, handling withdrawal from representation, communicating with others, supervising subordinate lawyers, handling client property, understanding trust account rules, managing a law office, assuring client satisfaction, and handling fee disputes.

B. *Fee Arbitration Program* — This program was established in 1979 to handle fee disputes between clients and lawyers. A method is provided for handling fee disputes without the expense of litigation.

C. *Lawyer Assistance Program* — This program began in 1983 and it is designed to assist lawyers with substance abuse problems. The goal is to intervene before lawyers cause harm to themselves or their clients.

D. *General Counsel's Ethics Help Line* — When lawyers question whether a particular course of action is ethical, they can call this Ethics Help Line for assistance before pursuing a particular course of action. The staff attorneys will discuss the facts and ethical issues and render an informal advisory opinion on the propriety of the contemplated conduct. The goal of this program is to aid lawyers in preventing potential ethical violations by discussing the hazards of certain conduct.

E. *Law Practice Management Program* — Established in 1995, this program employs a full-time consultant and research assistant to help lawyers handle routine problems faced by lawyers in the operation of the business side of the practice of law. The program also works directly with the Office of the General Counsel to assist lawyers whose actions may give rise to disciplinary problems.

If lawyers avail themselves of these programs they may be able to avoid the problems encountered in these disciplinary actions.

DECIDED JUNE 30, 1997 —
RECONSIDERATION DENIED JULY 24, 1997.

*William P. Smith III, General Counsel State Bar, Steven J.*

*Kaczkowski, Assistant General Counsel State Bar,* for State Bar of Georgia.