304 Ga. 836
FINAL COPY

S19Y0122. IN THE MATTER OF MELODY YVONNE CHERRY.

PER CURIAM.

Respondent Melody Yvonne Cherry (State Bar No. 123395) filed the underlying petition for voluntary discipline pursuant to Bar Rule 4-227 (b) to resolve two pending disciplinary matters. See Bar Rule 4-227 (b) (2). In the petition, Cherry admits violations of Rules 1.15 (I) (b), 4.1, and 8.4 (a) (4) of the Georgia Rules of Professional Conduct. See Bar Rule 4-102 (d). Although the maximum penalty for a violation of any of these Rules of Professional Conduct is disbarment, Cherry seeks imposition of a public reprimand, and the Bar agrees that the requested discipline is appropriate.

*State Disciplinary Board Docket No. 7135*

With regard to State Disciplinary Board ("SDB") Docket No. 7135, Cherry, who joined the State Bar in 1992, admits that in 2015 she was retained

by a client to represent him in a personal injury claim arising from an incident occurring on May 24, 2015. Because several people were injured in the accident, the limits of insurance coverage under the policy were insufficient to settle all of the claims, and the client was not able to receive what he believed was full compensation for his injuries and special damages. Cherry filed suit on the client's behalf, and after some discovery the claim was settled in September 2016 for a gross amount of $16,300. Cherry knew at that time that a lien had been asserted against the claim by a hospital and therefore made only a limited disbursement to her client. In February 2017, however, after the hospital notified Cherry that its lien had been released, Cherry prepared a settlement statement reflecting the client's wishes that the remaining funds, after reduction for attorney fees, costs, and repayment of a litigation loan, be paid directly to him to the exclusion of certain healthcare providers, including a doctor who Cherry knew had provided chiropractic care to her client. By signing the settlement statement, the client agreed that he would be "responsible for all outstanding medical expenses and [that he would] pay the same." Thereafter, Cherry paid the balance of the net proceeds of the settlement to her client.

Cherry admits, however, that in June 2015, she had sent a letter to the

doctor who provided chiropractic care to the client advising him that "any medical expenses incurred on behalf of [her client] shall be protected at the time of settlement of this case" and that "[s]aid funds shall be forwarded to your office upon conclusion of this matter."  The recitation of facts by the Bar indicates that the doctor provided medical treatment to the client in reliance on Cherry's written assurance that medical expenses incurred by the client would be protected at the time of the settlement of the case and that funds would be forwarded to the doctor upon conclusion of the case.  The Bar's response indicates the doctor submitted a bill in the amount of $2,444 for services to the client.  The Bar's response also refers to a grievance filed by the doctor, but the record does not contain a copy of that grievance. Cherry admits that by following her client's directive at the time of the disbursement in disregard of the interests of the doctor and his practice, she violated Rule 1.15 (I) (b)[1] of the

---

[1]  Rule 1.15 (I) relates to the safekeeping of property, and subsection (b) states in pertinent part:
> For the purposes of this Rule, a lawyer may not disregard a third person's interest in funds or other property in the lawyer's possession if:
> (1) the interest is known to the lawyer, and
> (2)  the interest is based upon one of the following:
>> (i)     A statutory lien;
>> (ii)    A final judgment addressing disposition of those funds or property; or

Georgia Rules of Professional Conduct.

*State Disciplinary Board Docket No. 7136*

With regard to SDB Docket No. 7136, Cherry admits that on April 19, 2017, a woman contacted her by phone concerning an April 18, 2017 automobile accident, providing the woman's address, the name of the at-fault driver, the at-fault driver's insurance company, and the assigned claim number. That same day, Cherry sent a letter of representation to the insurance company, referring to the woman who had called her as "my client" and requesting information about potentially applicable liability insurance coverage. The letter purported to include the woman's signature, notarized by Cherry's employee, but the woman did not actually sign the letter, and Cherry's employee notarized the signature at Cherry's direction. Cherry admits she is responsible for the false signature and that she intended for the insurance company to rely on the

---

(iii)    A written agreement by the client or the lawyer on behalf of the client guaranteeing payment out of those funds or property.

. . .

4

notarized signature in providing the requested information, which Cherry intended to use to help the woman promptly resolve any personal injury claim. An early e-mail from the woman may have given Cherry a basis for believing that the woman would soon be officially hiring her, but Cherry heard nothing more until mid-May when an attorney called, on the woman's behalf, advising Cherry that the woman had never hired Cherry or authorized her to communicate with the liability insurer. Cherry immediately notified the insurance company that she no longer represented the woman, but she admits that by preparing and sending the April 19 letter, she violated Rules 4.1[2] and 8.4 (a) (4)[3] of the Georgia Rules of Professional Conduct.

*Discussion*

---

[2] Rule 4.1 states in pertinent part:
> In the course of representing a client a lawyer shall not knowingly:
> (a) make a false statement of material fact or law to a third person; or
> (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

[3] Rule 8.4 (a) (4) states it is a violation of the Rules for a lawyer to "engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

Cherry admits no factors in aggravation of discipline, but offers some in mitigation — most of which go to SDB Docket No. 7136. Specifically, Cherry asserts that she has no prior disciplinary history; that she harbored no selfish or dishonest motive in that she mistakenly believed that the woman was going to formally retain her and expedited the process in an effort to provide prompt assistance to the woman; that she made a timely and good-faith effort to rectify the consequences of her misconduct by promptly withdrawing upon learning that the woman disputed the existence of an attorney-client relationship; that she has exhibited a cooperative attitude toward these disciplinary proceedings; and that she possesses good character and a positive reputation in the community, as evidenced by a character letter from a practicing attorney.

The Bar has responded to Cherry's petition for voluntary discipline, agreeing generally with Cherry's version of events and the various factors she sets out in mitigation of discipline. The Bar notes in aggravation, however, that Cherry has substantial experience in the practice of law, and that this case involves multiple offenses in that Cherry is admitting violations of three different Rules in the two incidents.

As noted, each of the three Rules Cherry admits to violating carries a

6

maximum penalty of disbarment. Cherry contends, and the Bar agrees, that in light of the mitigating circumstances, a public reprimand would be in conformity with prior decisions of this Court. See, e.g., *In the Matter of Davis*, 291 Ga. 169 (728 SE2d 548) (2012) (Review Panel reprimand for two Rule 8.4 (a) (4) violations where attorney twice signed client's name and had signature notarized on documents filed in the client's civil case); *In the Matter of Swain*, 290 Ga. 678 (725 SE2d 244) (2012) (public reprimand for violation of Rules 1.2 and 8.4 (a) (4) where the client's signatures on court documents were notarized outside of the client's presence). See also *In the Matter of Turner*, 289 Ga. 563 (713 SE2d 867) (2011) (Review Panel reprimand for violation of Rules 1.5, l.15 (I), 1.15 (II), and 8.4 (a) (4), where a respondent with no prior disciplinary history failed to obtain the client's written authorization to make changes to the legal fee, failed to keep detailed accounting of funds paid to her firm, removed funds from her IOLTA account as earned fees without the client's written authorization, and created a contract for legal services after the fact); *In the Matter of Mathis*, 286 Ga. 728 (691 SE2d 202) (2010) (Review Panel reprimand for admitted violations of Rules 1.3, 1.4, and 8.4 (a) (4), for failing to communicate with client or promptly file her petition to change custody, and

7

then ultimately filing the petition with a signed client verification attached even though the client signed the verification without ever reading or seeing the petition). Compare *In the Matter of Davis*, 303 Ga. 564 (814 SE2d 383) (2018) (rejecting petition seeking Review Panel reprimand where attorney admitted violations of Rules l.15 (I) (a) and 1.15 (II) (b), but denied violating Rule 8.4 (a) (4) even though he knowingly notarized a signature on a deed, thereby falsely attesting that the deed had been signed in his presence by the person whose signature appeared thereon).

Aware that this Court looks to the American Bar Association's Standards for Imposing Lawyer Sanctions for guidance in determining the appropriate sanction to impose, see *In the Matter of Morse*, 265 Ga. 353, 354 (456 SE2d 52) (1995), the Bar adds that a reprimand is generally appropriate when a lawyer knowingly engages, as Cherry did in SDB Docket No. 7136, in conduct that involves dishonesty, fraud, deceit, or misrepresentation that adversely reflects on the lawyer's fitness to practice law (see ABA Standard 5.13), or when a lawyer's negligence in dealing with client property causes injury or potential injury to a client, as Cherry did in SDB Docket No. 7135 when she deliberately disregarded the doctor's lien at the behest of her client and in apparent ignorance

8

of the rules that prohibit such conduct (see ABA Standard 4.13). Cherry asserts that her conduct did not appear ultimately to harm either her client or her potential client, and that Cherry's proposed resolution of these disciplinary matters is the result of negotiation between the Bar and Cherry. The Bar asserts that a public reprimand is sufficient to act as a penalty for Cherry, a deterrent to others, and an indication to laymen that the courts will maintain the ethics of the profession. See *In the Matter of Dowdy*, 247 Ga. 488, 493 (277 SE2d 36) (1981).

The ABA's Standards for Imposing Lawyer Sanctions, however, instructs the Bar to consider, among other things, "the potential or actual injury caused by the lawyer's misconduct . . . ."[4] We have reviewed the record in this case and are troubled by the absence of any information as to the ultimate resolution of the doctor's claim. Both parties to this matter address whether Cherry's conduct in SDB Docket No. 7135 harmed her client, but neither the Bar nor Cherry address whether the third-party doctor who provided care in reliance upon Cherry's representations about payment from settlement proceeds, and who filed

---

[4] See ABA, Center for Professional Responsibility, Standards for Imposing Lawyer Sanctions, Para. 3.0.

9

a grievance, has been made whole. Cherry admits she violated Rule 1.15 (I) (b), which prohibits a lawyer from disregarding a third person's interest in funds in the lawyer's possession where, as here, the third person's interest is based on a written agreement by the lawyer, on behalf of the client, guaranteeing payment out of these funds. It appears the third person in this case, a doctor, provided medical treatment to Cherry's client in reliance on the written agreement, but it is not possible from the record to determine whether the doctor has been paid. As the Bar noted, this case involves multiple offenses in two different incidents. Without further information regarding the resolution of the doctor's claim to settlement funds received by Cherry in SDB Docket No.7135, we are unable to determine whether the proposed resolution of these two matters is reasonable. See *In the Matter of Bozeman*, 286 Ga. 510 (689 SE2d 318) (2010) (ordering disbarment where lawyer failed to pay third-party medical care providers, comingled settlement funds with lawyer's personal funds, and made false representations to Bar investigators). See also *In the Matter of Dorer*, 304 Ga. 442 (819 SE2d 7) (2018) (not accepting recommended Review Panel reprimand for a putative Rule 8.4 (a) (4) violation without a full understanding of the facts). Accordingly, we reject Cherry's petition for voluntary discipline.

10

<u>Petition for voluntary discipline rejected. All the Justices concur.</u>

Decided January 7, 2019.

Petition for voluntary discipline.

<u>Warren R. Hinds</u>, for Cherry.

<u>Jenny K. Mittelman, General Counsel State Bar, Paula J. Frederick, James S. Lewis, Assistant General Counsel State Bar</u>, for State Bar of Georgia.