NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 5, 2026

S25Y1374. IN THE MATTER OF STEPHANIE DIANNE WOODARD.

PER CURIAM.

This matter appears for the second time before the Court. In the Court's first opinion, *In the Matter of Woodard*, 321 Ga. 681 (2025) ("*Woodard I*"), we rejected a petition for voluntary discipline filed by Stephanie Dianne Woodard (State Bar No. 233695) prior to the filing of a formal complaint, because the discipline proposed—a public reprimand—was insufficient as Woodard admitted to violating Rule 8.4(a)(3) ("[being] convicted of a misdemeanor involving moral turpitude where the underlying conduct relates to the lawyer's fitness to practice law") and (4) ("[engaging] in professional conduct involving dishonesty, fraud, deceit or misrepresentation") of the Georgia Rules of Professional Conduct

("GRPC"),[1] contained in Bar Rule 4-102(d), in connection with certain conduct that occurred between July 2018 and September 2022 and led to her pleading guilty to one misdemeanor count of violating OCGA § 45-11-4(b)(1) (charging a public officer with "[m]alpractice, misfeasance, or malfeasance in office") and (5) (charging a public officer with "[w]illfully and knowingly demanding more cost than he or she is entitled to by law in the administration and under the color of his or her office"). See 321 Ga. at 686. In her renewed petition, Woodard, who has been a member of the State Bar of Georgia since 1996, reasserts and readmits the conduct and Rule violations underlying her first petition but proposes a suspension of three to 12 months. She also requests that any suspension longer than three months be imposed nunc pro tunc to the date that she completed her criminal sentence under the First Offender Act, August 30, 2024, but states that she is willing to accept a non-retroactive suspension if deemed an appropriate sanction by the

---

[1] The maximum sanction for violations of GRPC 8.4(a)(3) and (4) is disbarment.

Court. Through an untimely response and subsequent amended response, the State Bar urges the Court to accept Woodard's petition but requests that the Court impose a 12-month suspension, without retroactive effect. Given the record before us, we accept Woodard's petition and impose a 12-month suspension nunc pro tunc to June 26, 2025, which is the undisputed date that Woodard became an inactive member of the State Bar.

The conduct underlying the current petition remains the same since our first review. As recited in *Woodard I*:

> In her petition, Woodard states that, on June 18, 2024, she was indicted by a Hall County Grand Jury on 24 felony counts of criminal misconduct, which was comprised of 13 counts involving alleged violations of OCGA § 16-10-20 and 11 counts involving alleged violations of OCGA § 16-8-2. The 24 counts alleged that, on 11 occasions, Woodard—while serving as the Solicitor General of the Hall County State Court—made requests and received reimbursement for expenses which were not official expenses for which she was entitled to reimbursement. Specifically, Counts 1-11 related to reimbursements from the Prosecuting Attorneys' Council, the circumstances of which Woodard contends she has "scant information," but believes may have resulted because she improperly sought reimbursement from both the Prosecuting Attorneys' Council and Hall County. Counts 12 and 13 related to an improper charge for the

3

cremation of a dog, which Woodard contends was an inadvertent and improper charge. Counts 14 and 15 related to cleaning supplies provided to someone Woodard was rehoming, which she contends was a legitimate reimbursement request pursuant to the Legal Victim Assistance Program and which resulted in an indictment because of the State's misunderstanding of the Program. Counts 16 and 17 related to a meal at a restaurant, which Woodard also contends was a legitimate reimbursement request. Counts 18-22 related to an improper charge for an LSAT prep course for Woodard's daughter, which she contends happened because someone on her staff saw the receipt and mistakenly pursued reimbursement. Counts 23 and 24 related to a pillow purchased for Woodard's son, which she contends happened because she mistakenly used the wrong credit card. In total, the amount of misappropriated funds was $2,219.28 (with $1,190.48 from the Prosecuting Attorneys' Council and $1,028.80 from Hall County).

Following the indictment, Woodard and the State began negotiations and agreed that the matter would be best settled by a nolle prosequi of the felony charges and Woodard entering a guilty plea to one misdemeanor count of a violation of OCGA § 45-11-4 (b) (1) and (5). According to Woodard, the State was concerned as to whether there was sufficient evidence to prove scienter or intent, as required for the indicted felony charges. Nevertheless, as Woodard admitted that her conduct constituted a breach of her duty as a public official, such that there was enough showing of criminal culpability to sustain a misdemeanor conviction under OCGA § 45-11-4, she entered her guilty plea under the First Offender Act and received 12 months on probation, which was to be terminated upon full and timely payment of restitution.

4

*Woodard I*, 321 Ga. at 682–83 (footnotes omitted).

Based on those facts, Woodard originally requested that this Court issue a public reprimand. But this Court concluded that the requested discipline was insufficient, as the facts supporting Woodard's violations make her case more like two prior disciplinary cases in which this Court imposed six-month and 18-month suspensions rather than the cases relied upon by Woodard in which this Court imposed public reprimands. Given that, this Court rejected Woodard's petition, without prejudice, to permit Woodard to file a renewed petition seeking voluntary discipline more consistent with the cases cited by this Court.

Accepting that invitation, Woodard's renewed petition now seeks a suspension of three to 12 months, with a request that, if the Court determines that a suspension longer than three months is an appropriate sanction for her conduct, the Court, in its discretion, consider imposing that suspension nunc pro tunc to August 30, 2024, which is when Woodard completed her criminal sentence. In

5

support, she offers the same mitigating factors previously recognized by this Court in *Woodard I* and continues to offer no aggravating factors.[2] To support her request that any lengthier suspension be imposed nunc pro tunc, Woodard adds that she "has not talked to a potential client, has not sought a legal position and has not been involved in any legal practice whatsoever since her resignation from office August 9, 2024." She further offers that, "[e]arlier in this process, she asked the State Bar to be placed on Inactive Status pending the outcome of this proceeding."

---

[2] In relying on the ABA Standards for Imposing Lawyer Sanctions (1992), Woodard offered the following: that she has no disciplinary history; that she lacked a dishonest or selfish motive; that she was experiencing personal or emotional problems due to her suffering from a physical ailment and the death of a family member; that she made a timely good faith effort to make restitution and rectify the consequences of her misconduct; that she cooperated fully with GBI and provided full disclosure to the State Bar; that she has a good character and reputation, as she has volunteered her time to many laudable activities for her community; that she was suffering a physical disability; that she received additional penalties and sanctions for her conduct, including intense media coverage and her resignation from her position as the Solicitor General of Hall County; and that she has expressed remorse. See *Woodard I*, 321 Ga. at 684 (citing ABA Standard 9.32(a), (b), (c), (d), (e), (g), (h), (k) and (l)). Woodard further offered in mitigation that the State and trial court recognized that her conduct was more appropriately characterized as a misdemeanor, as shown by the State's agreeing to a nolle prosequi for all 24 felony counts and accepting a plea to one misdemeanor count, and by the trial court's sentencing Woodard as a first offender and imposing a probated sentence to cease upon payment of restitution. Id.

6

In response, the State Bar recommends that the Court accept Woodard's petition. Although the State Bar's position with respect to the applicable mitigating and aggravating factors in this case has not changed since this Court's first review, the State Bar now agrees with the Court's conclusion in *Woodard I* that, given the seriousness of Woodard's violations, the presumptive penalty for Woodard's misconduct is a suspension of between six and 18 months and recommends that the Court impose a 12-month suspension.[3] However, the State Bar urges the Court to impose the suspension without retroactive effect, arguing that Woodard has failed to meet the requirements for a suspension nunc pro tunc to August 30, 2024, as set out by *In the Matter of Onipede*, 288 Ga. 156, 157 (2010), and that a suspension nunc pro tunc is insufficient based on the Court's conclusions in *Woodard I* that a public reprimand was insufficient

---

[3] The State Bar previously agreed in response to Woodard's original petition that eight out of the nine mitigating factors that Woodard lists from the ABA Standards apply to her case but insisted that two aggravating factors also apply, that is, Woodard's substantial experience in the practice of law and her illegal conduct. See *Woodard I*, 321 Ga. at 685 (citing ABA Standard 9.22(k) and (l)). But, based on those factors, the State Bar previously supported Woodard's original request for a public reprimand. See id.

discipline for Woodard's misconduct and the facts underlying Woodard's case make it more like cases in which the Court imposed six-month and 18-month suspensions. The State Bar notes that Woodard's sole support for making her suspension nunc pro tunc is her assertion that she ceased practicing law on August 9, 2024, yet she did not notify the State Bar that she wanted to transfer her Bar membership to inactive status until June 26, 2025, which was after the Court rejected her original petition. The State Bar further notes that Woodard failed to mention her allegedly refraining from the complete practice of law in her original petition, despite its potential importance to the Court's consideration at that time, and that her original petition stated that Woodard "*has been* a dedicated member of the State Bar of Georgia … [and *is*] a member of the Prosecuting Attorneys Council." (Emphasis added). The State Bar also argues that Woodard's resignation was not a voluntary action, as it was required by her plea deal to resolve the criminal charges against her and occurred only after both her indictment and an investigation into her actions conducted by an investigative journalist became

8

widely publicized. The State Bar lastly notes that the plea deal did not require her to cease practicing law entirely.

In her reply, Woodard does not contest the State Bar's claims that she has not shown sufficient evidence for a suspension nunc pro tunc to August 30, 2024, or that June 26, 2025, was the date she elected to transfer her State Bar membership to inactive status but asks this Court to consider that, as of her September 2025 filing of her reply, she had not practiced law for more than a year.

Given that Woodard's renewed petition now seeks discipline consistent with this Court's directive in *Woodard I*, the issues now before the Court are the suspension's appropriate length and whether the suspension, if longer than three months, should be imposed nunc pro tunc. As discussed below, we conclude that a 12-month suspension imposed nunc pro tunc to June 26, 2025, is appropriate as "a penalty to the offender, a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession." *In the Matter of Dowdy*, 247 Ga. 488, 493 (1981).

### *Suspension Length*

As we explained in *Woodard I*, 321 Ga. at 685–86, this case appears most like *In the Matter of Williams*, 284 Ga. 96 (2008), in which we imposed a six-month suspension to sanction an Assistant District Attorney who participated in a scheme initiated by the District Attorney to steal county funds and pleaded guilty to a single violation of OCGA § 45-11-5, and *In the Matter of Adams*, 291 Ga. 768 (2012), in which we imposed an 18-month suspension to sanction an attorney who misrepresented the number of hours worked while representing indigent clients and overbilled the judicial circuit's Indigent Defense Program in excess of $10,000. While Woodard acknowledges this, she asserts that her circumstances are still distinguishable, such that she urges the Court to impose a three-month suspension rather than the longer suspensions imposed in those cases.

Woodard asserts that *Williams* is distinguishable from her case because it involved an intentional scheme to steal large amounts of public funds and resulted in its initiator, Williams's co-conspirator,

being disbarred and sentenced to six years in prison, whereas Woodard's acts were not intentional, the amount of misappropriated funds was comparatively small, and her sentence included no prison time. But, as this Court has explained, "each case must be largely governed by its particular facts," *Dowdy*, 247 Ga. at 493, and the facts in this record support the conclusion that most, if not all, of Woodard's conduct was intentional. Indeed, she pleaded guilty to § 45-11-4(b)(5), meaning that she admitted that she "willfully and knowingly" demanded more cost than she was entitled to by law. And, while the amount of funds involved in Woodard's crimes is relevant to assessing the injury caused by her misconduct, it is only part of the Court's consideration when imposing discipline. See *In the Matter of Cook*, 311 Ga. 206, 211 (2021) (in determining the appropriate sanction to impose, we consider the following factors: "the duty violated; the lawyer's mental state; the potential or actual injury caused by the lawyer's misconduct; and the existence of aggravating or mitigating factors." (citations omitted)). Finally, comparing her sentence to that received by Williams's co-conspirator

11

is unavailing inasmuch as Williams, himself, received a sentence very similar to Woodard's for his crime (i.e., a sentence under the First Offender Act of one year of probation which could be terminated early upon certain conditions). See *Williams*, 284 Ga. at 96.

With respect to *Adams*, Woodard points out that the State Bar there recommended the 18-month suspension that was ultimately imposed, the petitioning attorney had a prior investigative panel reprimand, and the county's Indigent Defense Governing Committee (as well as others) submitted letters opposing the petition for voluntary discipline. See 291 Ga. at 769. While there are notable differences from this case, Woodard's circumstances still appear materially similar to the circumstances in *Adams*, such that disfavoring a lengthier suspension in favor of a shorter, three-month suspension is inappropriate for this case. Both *Adams* and Woodard's case involve violations of GRPC 8.4(a)(4), which is "among the most serious violations with which a lawyer can be charged." *Woodard I,* 321 Ga. at 685. *Adams* also similarly

concerned conduct that involved multiple offenses, spanning a significant amount of time (there, a year), in which the petitioning attorney was indicted for several counts of violating the same criminal statutes that comprised Woodard's indictment (17 counts charged under OCGA § 16-12-20 and 17 counts charged under OCGA § 16-8-2). See *Adams*, 291 Ga. at 768–69. Moreover, unlike *Adams*, Woodard's case involves a guilty plea to a misdemeanor and a resulting violation of GRPC 8.4(a)(3) that this Court must consider. That additional violation supports imposing a lengthier suspension than three months, especially since, "as a public official, Woodard was in a position of power and responsibility, and when considering the appropriate sanction to impose this Court is concerned about the public's confidence in the profession." *Woodard I*, 321 Ga. at 685 (cleaned up).

Woodard offers no authority supporting the imposition of a suspension of less than six months in her case, and we have found none. However, she presents several mitigating factors, which the State Bar mostly agrees are applicable, and those factors support a

13

shorter suspension rather than a longer one. That said, the State Bar notes as aggravating factors Woodard's substantial experience in the legal profession and her commission of a crime. And the only documentation for two of Woodard's mitigating factors—that she suffered from personal and emotional problems due in part to a physical ailment and that she was suffering from a physical disability due to that same ailment—is a medical record dated long after the misconduct occurred. Considering the seriousness of the admitted Rule violations, the Court's conclusions regarding the underlying conduct in *Woodard I*, and the record, the imposition of a 12-month suspension is appropriate here.

### *Nunc Pro Tunc Request*

Because of the general difficulty of the State Bar and this Court determining whether and when an attorney ceased practicing law, we have explained that:

> [W]hen an attorney requests entry of a suspension or voluntary surrender order nunc pro tunc, it is the lawyer's responsibility to demonstrate that they voluntarily stopped practicing law, the date on which their law practice ended, and that they complied with all the ethical

14

obligations implicated in such a decision, such as assisting clients in securing new counsel and facilitating the transfer of client files and critical information about ongoing cases to new counsel.

*Onipede*, 288 Ga. at 157.[4] The State Bar specifically contests that Woodard has shown that she voluntarily stopped practicing law by August 30, 2024, as required by *Onipede*,[5] and argues that a suspension nunc pro tunc is insufficient based on the Court's conclusions in *Woodard I* about the appropriate level of sanctions. Although we agree with the State Bar that Woodard has not shown sufficient evidence to support a suspension nunc pro tunc to August 30, 2024, we conclude that the record sufficiently supports a

---

[4] Bar Rule 4-219(b) provides, in part, that, "[a]fter a final judgment of disbarment or suspension, including a disbarment or suspension on a Notice of Discipline, the respondent shall immediately cease the practice of law in Georgia and shall, within 30 days, notify all clients of his inability to represent them and of the necessity for promptly retaining new counsel, and shall take all actions necessary to protect the interests of his clients."

[5] As an elected official without legal clients of the sort that could be notified as required by Bar Rule 4-219(b), upon Woodard's resignation from her position as the Solicitor General of Hall County, there were no additional steps required to comply with her ethical obligations. See *In the Matter of Coomer*, 320 Ga. 430, 439 n.10 (2024) (imposing a suspension nunc pro tunc after noting, inter alia, that the respondent represented that he ceased practicing law once appointed to the Court of Appeals such that, upon his removal from the bench and thereafter refraining from the practice of law, there were no additional steps necessary to comply with Bar Rule 4-219(b)).

15

suspension nunc pro tunc to June 26, 2025, which is the undisputed date that Woodard became an inactive member of the State Bar.

With respect to the date that Woodard voluntarily ceased practicing all law, Woodard claims that she stopped practicing law on August 9, 2024, when she resigned as part of her negotiated plea. However, as noted by the State Bar, Woodard's guilty plea did not require that she stop practicing law entirely. Thus, the sole support for a suspension nunc pro tunc to August 30, 2024, is Woodard's bare, unsworn assertion that she voluntarily stopped practicing law before that date. While the Court could credit that allegation, Woodard did not allege in her first petition that she had ceased practicing law, despite its mitigating nature, and she did not transfer her Bar membership to inactive until a couple of weeks before filing the current petition. Those facts, which Woodard does not dispute, call her allegation into question. That said, sufficient support exists for a suspension nunc pro tunc to June 26, 2025, the date upon which the State Bar asserts, and Woodard does not contest, that Woodard informed the State Bar's Membership

Department of her inactive status. See also Bar Rule 1-202(a) (providing that an attorney wishing to become an inactive member of the State Bar contact the Membership Department and "elect to be transferred to Inactive Status membership provided that the member: (1) is not engaged in the practice of law; (2) does not hold himself or herself out as a practicing lawyer or attorney; (3) does not occupy any public or private position in which the member may be called upon to give legal advice or counsel; and (4) does not examine the law or pass upon the legal effect of any act, document, or law for the benefit of another person, company, or corporation"). Thus, it is undisputed that Woodard voluntarily elected to become an inactive member of the Bar on June 26, 2025. Finally, with respect to the State Bar's argument that a suspension imposed nunc pro tunc is inconsistent with the Court's conclusions in *Woodard I* that a public reprimand is insufficient and that this case is more like cases in which the Court imposed six-month and 18-month suspensions, we disagree.

17

Based on the foregoing, we conclude that the record sufficiently supports the imposition of a 12-month suspension nunc pro tunc to June 26, 2025.[6]

### *Conclusion*

Having reviewed the record, we accept Woodard's petition for voluntary discipline and impose a 12-month suspension nunc pro tunc to June 26, 2025, as an appropriate sanction for Woodard's admitted violations of GRPC Rule 8.4(a)(3) and (4). We conclude that this sanction adequately serves the purpose of imposing discipline as expressed by this Court in *Dowdy*, 247 Ga. at 493, as it penalizes Woodard for her misconduct but also considers her mitigating circumstances; deters other attorneys from committing similar misconduct; and assures the public that the ethics of the profession will be maintained, including in cases involving misconduct by public officials. See *Dowdy*, 247 Ga. at 493. Because there are no

---

[6] Here, Woodard has made clear that she is willing to accept any suspension of up to 12 months without retroactive effect. Therefore, imposing a suspension nunc pro tunc to July 26, 2025, rather than August 30, 2024, is not a greater sanction than what Woodard requests in her petition. Cf. *In the Matter of Veach*, 310 Ga. 470, 472 (2020).

conditions on Woodard's reinstatement other than the passage of time, there is no need for her to take any action either through the State Bar or this Court to effectuate her return to the practice of law. Instead, the suspension based on this opinion will expire by its own terms 12 months from June 26, 2025. Woodard is reminded of her duties pursuant to Bar Rule 4-219(b).

*Petition for voluntary discipline accepted. Twelve-month suspension nunc pro tunc to June 26, 2025. All the Justices concur.*