**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: June 30, 2022

S22Y0729. IN THE MATTER OF DANIEL KIRKLAND MCCALL.

PER CURIAM.

This disciplinary matter is before the Court on a petition for voluntary discipline filed by Daniel Kirkland McCall (State Bar No. 481099), prior to the issuance of a formal complaint under Bar Rule 4-227 (b) (2). McCall, who has been a member of the Bar since 1981, has been under an interim suspension since May 13, 2019, for failing to adequately respond to the Bar's Notices of Investigation. He now admits violating Rules 1.2, 1.3, 1.4, 1.5 (a), 1.16 (d), 8.4 (a) (4), and 9.3 of the Georgia Rules of Professional Conduct ("GRPC") found in Bar Rule 4-102 (d) related to the three disciplinary matters that resulted in his interim suspension. He seeks a six-month suspension nunc pro tunc to May 13, 2019, with a condition for reinstatement. The Bar has responded and recommends that the Court accept his

petition, but seeks to add an additional condition to his reinstatement. For the reasons discussed in more detail below, we reject McCall's petition for voluntary discipline.

As to State Disciplinary Board Docket ("SDBD") No. 7325, McCall admits that in June 2018 he was retained by a client to represent him in a criminal matter in Cobb County Superior Court. McCall received a flat fee of $4,000. After a few weeks passed without any contact from McCall, the client reached out for a case update and to provide his new address. McCall became angry when he found out that the client had moved without consulting him, even though the client had only relocated to a new local residence. On August 1, 2018, the client received an email from McCall stating in part, "My law firm will require an additional $96,000.00 to move forward at present." The next day, the client responded that he would not be able to afford the additional fee and reiterated the flat-fee agreement for legal representation was for $4,000. McCall then decided that he would only receive communication from the client through email and postal mail, and without explanation, all

telephone conversations and text messaging were discontinued. Later that month, the client sent McCall a certified letter terminating the representation and requesting a full refund. Although McCall failed to file any pleadings, obtain discovery, or attend court appearances, he refused to refund the fee paid by the client.

As to SDBD No. 7326, McCall admits he was retained by a client to pursue a personal injury claim arising from a vehicular collision that occurred on June 16, 2016, in which the client was injured as a patient riding inside an ambulance. In January 2018, the client noticed that McCall began to exhibit paranoid behavior that the client described as "out of context" and "bizarre," and in an effort to expedite the case, the client requested that McCall make a settlement offer to the opposing parties, but he refused. On one occasion, McCall called the client at 3:00 a.m. in an intoxicated state, "accusing and berating her for conduct that was unknown [to the client]." Later, McCall was repeatedly asked to discontinue the "bizarre" conduct of sending "inappropriate text messages" to the

3

client's disabled teenage daughter.

In June 2018, McCall filed a lawsuit against the ambulance operator and the operator's employer, but failed to name the second vehicle operator and his employer or to serve any of the parties. To verify whether the lawsuit was actually filed, the client reached out to McCall for a case update, but he was nonresponsive as to the status of the case. The client then contacted a different attorney with questions about the filing of her case, but that attorney was unable to verify whether her case was filed.

By July 2018, McCall refused to respond to the client's emails and telephone calls, and refused to have a client meeting; through email, the client requested that McCall return her client file, but McCall refused; and the client then went to McCall's office and found that he had posted a sign saying that he was on medical leave. On July 16, 2018, the client mailed a certified letter to McCall's residence which terminated his legal services, along with a signed consent-to-withdraw form; she provided all of this information through email as well; and the certified letter was soon returned to

4

her as unclaimed by the United States Postal Service ("USPS").

The statute of limitations for the client's claims expired on September 22, 2018. McCall's refusal to release the client file and to properly withdraw as legal counsel adversely affected the client's case. Despite not performing any of the services for which he was retained, McCall filed an attorney's lien against the client's case.

As to SDBD No. 7327, McCall admits that after he avoided answering questions regarding the status of the SDBD No. 7326 client's personal injury claim, the client contacted a new attorney and stated that McCall was her attorney and that he was demonstrating erratic behavior and refused to communicate with her about the status of the filing of her lawsuit. The other attorney was unable to verify whether the lawsuit was filed, but advised McCall's client to continue her attempts to communicate with McCall regarding the status of her case. After the client finally learned from McCall that he had filed the lawsuit and was on medical leave, she terminated his representation and requested that he return her client file, but he refused to do so.

5

On July 18, 2018, the client's new attorney filed an entry of appearance in Cobb County State Court, where McCall had filed the lawsuit on behalf of the client. The new attorney filed a motion to add the omitted driver involved in the motor vehicle accident as a party defendant on July 19, 2018, but the statute of limitations had expired as to the second driver's employer. Additionally, the new attorney discovered that none of the named defendants were served with the lawsuit despite the expiration of the statute of limitations, which required perfecting service as diligently as possibly.

On July 23, 2018, the new attorney sent a certified letter to McCall advising that he was retained as the client's counsel in the pending lawsuit and enclosed a notice of substitution of counsel; the letter was also emailed to McCall. However, McCall failed to acknowledge or respond to the letter or email, and in mid-August 2018, the letter was returned to the new attorney by the USPS, marked "unclaimed."

On July 31, 2018, the new attorney directed another letter to McCall advising him of the multiple attempts to solicit his

cooperation in transmitting the file documents to the client, and the new attorney reminded him that he was required to personally withdraw as the client's counsel and return her file and that failure to do so would adversely impact her ability to pursue her claims. On August 24, 2018, the new attorney emailed McCall seeking his cooperation in returning the client file to the client and attaching copies of the previously sent letters. In response to this email, the new attorney received a two-word profane response from McCall. The new attorney also "reviewed [other] documents where [McCall's] responses demonstrated that he may be incapacitated and unable to adhere to the requirements of the [GRPC]."

The two clients and the new attorney all filed grievances against McCall with the Bar, but he failed to respond to the grievances, and he also failed to acknowledge service or respond to the Notices of Investigation for these disciplinary matters as required by Bar Rule 4-204.3. As a result, as noted above, on May 13, 2019, this Court entered an order suspending McCall's bar license until further order of the Court.

7

As to the GRPC, McCall now admits that by his conduct he violated Rules 1.2, 1.3, 1.4, 1.5 (a), 1.16 (d), 8.4 (a) (4), and 9.3. Specifically, he admits that he violated these rules by failing to abide by his client's decision to settle a case, to consult with his clients regarding the means by which he would pursue their cases, to take prompt action, to pursue actions on behalf of his clients, to communicate adequately, to charge clients a reasonable fee, to properly withdraw from representation and relinquish files, to respond to the Notices of Investigation, and to provide his clients with the accurate status of their cases. The maximum sanction for violations of Rules 1.4, 1.5, 1.16, and 9.3 is a public reprimand, while the maximum sanction for violations of Rules 1.2, 1.3, and 8.4 (a) (4) is disbarment.

McCall states that he has been an attorney for over 30 years with a good record and no prior disciplinary action. In addition, he states that in early 2018 he began experiencing physical and mental health issues, and after realizing that something was wrong, he sought health care and answers for himself, recounting a number of

treatment facilities that he visited in 2018 and 2019. In 2019, he arranged admission to one facility as part of "his bond conditions."[1] McCall states that he ultimately received a mental health diagnosis, is being treated with medication and therapy, and has used no alcohol or other substance—beside his prescribed medications— since 2018.

McCall further notes that he notified his clients that he was on medical leave beginning in 2018; he referred some of his clients to other counsel, giving them credit for fees paid; and he posted this information on his office door and told clients in person or otherwise. As for the client in SDBD No. 7325, McCall states that he did some work on his case and that while that client is seeking a full refund, he is only willing to offer him a refund of the unearned fee, in an amount agreed upon between the two; that this money will be paid in the "near future" when the money is released from a bonding company back to McCall; and that this process has begun and should

---

[1] Curiously, McCall does not explain the circumstances surrounding his arrest, including the charges, and the State Bar offers no explanation for why McCall is on bond.

be completed within 60 days. He also states that he has provided the Bar with proof of services rendered and fees earned and will provide proof of payment to that client when it occurs.

Looking to the ABA Standards for Imposing Lawyer Sanctions, which are to be used in determining the appropriate level of discipline, see *In the Matter of Von Mehren*, 312 Ga. 345, 348 (862 SE2d 547) (2021), McCall notes that he violated his ethical duties to his clients and the profession, and that under normal circumstances, he knew or should have known that his actions and inactions would result in harm, but that he was suffering from a psychotic episode. He also notes that in some instances his conduct was negligent. Regarding injury, he states that potential injury resulted in all of these matters, but no actual injury occurred in his clients' cases, except to his client in SDBD No. 7325, based on the fees paid.

Regarding mitigating factors, McCall points to the absence of a prior disciplinary record, see ABA Standard 9.32 (a); absence of a selfish or dishonest motive, see ABA Standard 9.32 (b); and personal and emotional problems, which include his serious mental health

issues that he asserts he has now addressed, see ABA Standard 9.32 (c). He also points to his "good faith effort to mitigate damages" as he is "prepared to refund [his client in SDBD No. 7325] his unearned retainer," see ABA Standard 9.32 (d); his cooperative attitude and full disclosure in the disciplinary proceedings, where he has admitted to his problems and has cooperated fully, see ABA Standard 9.32 (e); and the presence of a mental or physical disability, as previously discussed, see ABA Standards 9.32 (h) and (i). Regarding aggravating factors, McCall claims that none of the factors outlined in ABA Standard 9.22 apply, except substantial experience in the practice of law, see ABA Standard 9.22 (i).

McCall states that while he recognizes the seriousness of this matter and takes full responsibility for his actions and inactions, he believes that a six-month suspension, nunc pro tunc to May 13, 2019, is appropriate here where all of the conduct in the Bar complaints occurred during the time in which he was in the midst of a psychotic episode and was seeking treatment. He asserts that he has complied with the requirements as set forth in *In the Matter of Onipede*, 288

11

Ga. 156, 157 (702 SE2d 136) (2010) (setting out requirements for applying suspension nunc pro tunc), because he voluntarily stopped practicing law in 2018, he advised some of his remaining clients of this cessation by mail, email, text, and placing a note on his office door, and he referred some clients to other counsel and returned files. Finally, he states that as a condition for his reinstatement, he should be required to demonstrate to the Office of the General Counsel of the Bar that he is continuing to receive treatment and he has been certified fit to return to the practice of law through a board-certified and licensed mental health professional. He then asserts that he already has met these conditions because a psychologist evaluated him in 2020 and found him competent to practice law and that he continues to receive therapy, medication, and counseling; he also participates in group therapy.

The Bar has filed a response in which it agrees with the underlying facts and particular rule violations. As for aggravating factors, the Bar concludes that McCall had a dishonest or selfish motive, see ABA Standard 9.22 (a), because rather than explain that

he had a health concern and was unable to provide legal representation, he avoided communicating with his client in SDBD No. 7326 and filed an incomplete lawsuit that was not served on any of the party defendants, which was dishonest. In addition, the Bar concludes that McCall inexplicably increased his fee for his client in SDBD No. 7325 without any explanation, which was selfish. The Bar further notes McCall's substantial experience in the practice of law, see ABA Standard 9.22 (i). As for mitigating factors, the Bar notes McCall's absence of a prior disciplinary history, see ABA Standard 9.32 (a); physical or mental disability or impairment, see ABA Standard 9.32 (h); and his interim rehabilitation and commitment to ongoing mental health treatment, see ABA Standard 9.32 (i).

As to the level of discipline, the Bar states that it does not oppose McCall's request for the Court to accept his petition and impose a suspension nunc pro tunc to May 13, 2019, with his proposed condition for reinstatement. It states that the suspension, nunc pro tunc, is supported by the contents of his affidavit and *Onipede*, and the fact that he has demonstrated that he has not

13

practiced law since May 2019 and continues to follow the regimen provided by his mental health providers. However, the Bar also notes that on April 13, 2021, McCall voluntarily participated in a mental health evaluation by Dr. Matthew W. Norman, M.D., who issued a Bar Fitness Evaluation and found that McCall was unfit to practice law. Thus, the Bar requests that the interim suspension remain active until proof of his fitness to practice law is provided by a licensed and board-certified mental health professional. Moreover, it states that as conditions for his reinstatement, McCall must provide satisfactory proof to the Bar that he continues to adhere to current medication regimens; continues treatment with his licensed and board certified psychiatrist and psychologist; continues attendance with group therapy; and adheres to all recommendations by his physicians. Moreover, the Bar contends that as a condition of reinstatement, McCall should include proof that he has provided a full refund to the client in SDBD No. 7325.

The facts as outlined in McCall's petition support his admission that he violated Rules 1.2, 1.3, 1.4, 1.5, 1.16 (d), 8.4 (a) (4), and 9.3.

A six-month suspension, as requested by the parties, is within the range of discipline that this Court previously has imposed in cases involving similar violations of Rules 1.2, 1.3, 1.4, 1.5, 1.16 and 9.3 and mitigating factors. See *In the Matter of Kirby*, 312 Ga. 341, 345 (862 SE2d 550) (2021) (accepting petition for voluntary discipline and imposing six-month suspension for violating Rules 1.2, 1.3, 1.4, and 1.16 in four separate matters, where attorney addressed his mental health and practice management problems); *In the Matter of Johnson*, 303 Ga. 795, 798-799 (815 SE2d 55) (2018) (accepting petition for voluntary discipline and imposing six-month suspension for violating Rules 1.3, 1.4, 1.5, 1.15 (I), 1.16 (d), and Rule 1.15 in seven separate matters, where attorney was suffering from personal and emotional problems at time of misconduct and had taken intervening efforts to improve himself and his law practice); *In the Matter of Huggins*, 291 Ga. 92 (727 SE2d 500) (2012) (accepting petition for voluntary discipline and imposing six-month suspension with conditions for reinstatement for violations of Rules 1.3, 1.4, 1.15, 1.16, and 9.3 in five client matters, where attorney had no prior

disciplinary history and was receiving treatment for his personal issues).

But "a violation of Rule 8.4 (a) (4) is among the most serious violations with which a lawyer can be charged." *In the Matter of West*, 300 Ga. 777, 778 (798 SE2d 219) (2017) (citation and punctuation omitted). And, we question whether the parties' recommendation of a six-month suspension would be accepted considering the discipline that this Court previously has imposed involving similar violations of Rule 8.4 (a) (4) and mitigating factors. See *In the Matter of Golub*, ___ Ga. at ___ (4) (Case No. S22Y0687, decided May 3, 2022) (one-year suspension with conditions for reinstatement for violations of Rules 1.2 (a), 1.3, 1.4 (a), 1.16 (d), 3.2, and 8.4 (a) (4) in one client matter, where attorney had a prior disciplinary matter from 22 years earlier and was experiencing health issues at the time of the misconduct); *In the Matter of Jaconetti*, 291 Ga. 772, 772-773 (732 SE2d 447) (2012) (three-year suspension with conditions for reinstatement for violations of Rules 1.2, 1.3, 1.4, 1.7, 1.16 (d), and 8.4 (a) (4) in eight client matters,

16

where attorney had no prior disciplinary history and was receiving treatment for her mental health issues). However, we need not resolve this question because after having carefully considered the petition and response, we cannot agree to accept McCall's petition for other reasons.

First, we have some general concerns with what McCall asserts as mitigating circumstances. Specifically, while McCall has listed as a mitigating factor his good faith effort to mitigate damages and his cooperative attitude in the disciplinary proceedings, he also admits in his petition that he has not yet paid back his client in SDBD No. 7325 in any amount, and he is accused of committing a Rule 9.3 violation by failing to respond to any of the Notices of Investigation. Moreover, McCall states that his conduct caused no harm to his clients' cases, but it appears based on the admitted facts that he did cause harm to his client in SDBD No. 7326 and her ability to pursue her personal injury case. His petition also references "bond conditions," which suggests that criminal charges were filed against him at some point, but no further information has been provided to

17

the Court in this regard.

More importantly, we have concerns with the conditions as they are currently set forth by the parties. As to the condition involving fitness to practice law, we agree that the facts and McCall's history of mental illness support conditioning any reinstatement upon his demonstrating to the Office of the General Counsel of the Bar that he is continuing to receive treatment and that he has been certified mentally fit to return to the practice of law through a board-certified and licensed mental health professional. See *In the Matter of Moore*, 300 Ga. 407, 409 (729 SE2d 324) (2016) (conditioning reinstatement "upon [lawyer] providing a detailed, written evaluation by a licensed psychologist or psychiatrist certifying that he is mentally competent to practice law"). And while it may not be necessary to prove fitness at this juncture, it concerns us that McCall claimed to be fit to practice law in his petition, even though an April 13, 2021 Bar Fitness Evaluation concluded otherwise. As to the condition involving repayment of fees, we also agree with the Bar that McCall should include proof that he has

18

provided a *full* $4,000 refund to the client in SDBD No. 7325. McCall claims that he did some work on the client's case, but he provides no evidence to support his assertion; rather, the facts demonstrate that McCall failed to file any pleadings, obtain discovery, attend court appearances, or complete any work on his client's behalf. While we agree with the Bar that a repayment condition should be included as part of the discipline imposed, the GRPC do not contemplate allowing the Court to accept a petition for voluntary discipline and adding conditions to the petition that are more stringent than those requested.

Finally, we conclude that McCall has not adequately demonstrated that his suspension should be imposed nunc pro tunc to the date of the suspension, because he attests that he only informed "some" of his clients that he was closing his practice and helped them retain new counsel. Moreover, based on the facts, it is clear that he failed to assist the two clients at issue "in securing new counsel and facilitating the transfer of client files and critical information about ongoing cases to new counsel." *Onipede*, 288 Ga.

at 157 (2010); see also *In the Matter of Palazzalo*, 310 Ga. 634, 645 (853 SE2d 99) (2020) (detailing steps attorney took to make the showing required under *Onipede* to receive imposition of suspension nunc pro tunc). Accordingly, we reject McCall's petition for voluntary discipline.

*Petition for voluntary discipline rejected. All the Justices concur.*