314 Ga. 576
FINAL COPY

S22Y1093. IN THE MATTER OF ANDREW MATTESON.

PER CURIAM.

This disciplinary matter is before the Court on Andrew Charles Matteson's (State Bar No. 477140) petition for voluntary discipline, which was filed pursuant to Bar Rule 4-227 (b), before the issuance of a formal complaint. In the petition, Matteson admits that he violated a variety of the Georgia Rules of Professional Conduct ("GRPC"), found at Bar Rule 4-102 (d), in connection with two underlying disciplinary matters but offers various factors in mitigation of discipline and requests, as a sanction, the suspension of his license to practice law for a period of time ranging from three months to six months. Although the State Bar does not oppose the petition, and although the requested suspension ultimately may prove to be an appropriate sanction under the facts of this case, Matteson has failed to provide this Court with evidence to support

material assertions made in his petition or with anything to assure the Court that Matteson will not commit the same type of violations he admits in this petition if the suspension he seeks is granted and he later returns to the practice of law. Therefore, we reject the petition for voluntary discipline.

In his petition, Matteson, who was admitted to the Bar in 2000, makes the following admissions unconditionally with respect to State Disciplinary Board Docket ("SDBD") No. 7496. In exchange for a total retainer of $1,500 paid to Matteson's law firm, Matteson represented a client in several personal and business matters over a number of years including 2017. Part of that work included representing the client in multiple, significant disputes with various contractors relating to the construction of a $2,000,000 home in metro Atlanta. At least six of the contractors filed liens on the referenced property. When the liens endangered the client's efforts to refinance the construction loan on the property, Matteson prepared and filed bonds on the client's behalf and deposited $92,311.90 into the court's registry. In the meantime, at the client's

direction, Matteson continued to negotiate with the lien holders, and eventually the court ordered that $75,646 be disbursed to Matteson and his firm to pay the outstanding liens on the client's behalf. Matteson deposited the funds into his law firm account and used the funds in part to satisfy the liens, but he did not notify the client that the bond funds had been discharged or that the liens had been satisfied with those funds, and he did not respond to the client's subsequent efforts to contact him or to the client's requests for information and documents. In 2019, the client filed a lawsuit against Matteson. Matteson states that he chose not to dispute the client's claims (although he disagreed with some of them), and he avers that he and the client settled the lawsuit; that, as a result of the settlement, a consent judgment was entered against Matteson in the amount of $86,520.58; and that he quickly took steps to satisfy the judgment. Thus, Matteson represents that the client's claims have been resolved in full, although he presents no evidence to support that representation.

With regard to another client matter, which is referenced in the petition as State Disciplinary Board File No. 210147, Matteson admitted that he represented a client and his company in a business dispute wherein another company sued them, seeking damages for violations of a complex joint venture agreement and for fraud. Matteson entered a limited appearance and filed a motion to dismiss the lawsuit in February 2016, but then stopped performing work on the case. Rather than answering the complaint, Matteson relied on the motion to dismiss. The record of the case shows that the plaintiff sought a default judgment against Matteson's clients; that Matteson filed no response to the motion; that the court eventually entered an order finding Matteson's clients to be in default and ordering a trial on damages; that Matteson took no steps to open the default; that the court denied Matteson's motion to dismiss the lawsuit; that Matteson did not attend the trial on damages; and that the court then entered a judgment against Matteson's clients for damages including punitive damages in excess of one million dollars. Matteson admits that he failed to advise his clients about any of

these developments. In March 2018, Matteson filed a notice of appeal seeking review of the judgments, but he did not advise his clients of the appeal. The clients eventually filed a legal malpractice claim against Matteson and his former law firm, and the claim was arbitrated, resulting in the issuance of an award of over $640,000 in the clients' favor. Matteson claims that the award has been fully satisfied and that the clients' claims have been resolved in full, although, once again, he has submitted no proof of that assertion.

Matteson states that during his representation of the client in SDBD No. 7496, his law firm went through a dissolution and he opened his own firm as a solo practitioner; and that he began experiencing symptoms of depression during the above-described representations. Matteson asserts that he has been continuously treated for depression and anxiety since 2015 and that he has been compliant with treatment and medication. As proof of his condition, Matteson refers to Exhibit A, which he contends is attached to his petition. But that exhibit was never forwarded to this Court despite this Court's June 22, 2022 order granting Matteson's motion to file

5

Exhibit A under seal. Matteson represents that his experience with depression ultimately led him to close his law practice in 2019 and step away from the practice of law. He admits that his mental condition materially impaired both of the above-described representations and that he should have withdrawn from those representations.

As a result, Matteson admits that in connection with his representation of the client in SDBD No. 7496 he violated Rules 1.2 (a),[1] 1.4 (a),[2] 1.15 (I) (c),[3] and 1.16 (a) (2)[4] of the GRPC. And, with

---

[1] Rule 1.2 (a) requires a lawyer to consult with and abide by his client's decisions concerning the scope and objectives of the representation.

[2] Rule 1.4 (a) provides that a lawyer shall promptly inform the client of any decision or circumstance with respect to which the client's informed consent is required; shall consult with the client about the means by which his objectives are to be accomplished; shall keep the client reasonably informed about the status of the matter; shall promptly comply with reasonable requests for information; and shall explain matters to the extent necessary to permit the client to make informed decisions regarding the representation.

[3] Rule 1.15 (I) (c) provides that, upon receiving funds in which a client has an interest, a lawyer shall promptly notify the client and deliver that portion of the funds which the client is entitled to receive.

[4] Rule 1.16 (a) (2) provides that a lawyer shall withdraw from representation of a client if the lawyer's physical or mental condition materially impairs his ability to represent the client.

6

regard to his representation of the clients in State Disciplinary Board File No. 210147, Matteson admits that he violated Rules 1.1,[5] 1.2 (a), 1.3,[6] 1.4, and 1.16 (a) (2) of the GRPC. The maximum sanction for a violation of Rules 1.4 and 1.16 (a) is a public reprimand, while the maximum sanction for a violation of Rules 1.1, 1.2, 1.3, and 1.15 (I) is disbarment.

Matteson admits no factors in aggravation of discipline, but, relying on the ABA Standards for Imposing Lawyer Sanctions (1992), he offers the following factors in mitigation: that he has no disciplinary record; that he lacked a dishonest or selfish motive; that, at the time of these violations, he was suffering from a mental disability or emotional problems for which he was being treated by a doctor; that he made a timely good faith effort to make restitution or to rectify the consequences of his misconduct; that he displayed a cooperative attitude toward the disciplinary proceedings; and that

---

[5] Rule 1.1 requires a lawyer to provide competent representation to his client.

[6] Rule 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client.

he is remorseful for his actions and inactions. See ABA Standard 9.32 (a), (b), (c), (d), (e), (i), and (l). He submits that the appropriate sanction for his conduct would be a suspension of his law license for a period of time between 90 and 180 days in length.

The State Bar has filed a response, stating that Matteson's petition contains admissions of fact and conduct sufficient to authorize the imposition of the discipline he has requested and that the discipline Matteson requests is sufficient to serve as "a penalty to the offender, a deterrent to others and [ ] an indication to laymen that the courts will maintain the ethics of the profession." See *In the Matter of Dowdy*, 247 Ga. 488, 493 (277 SE2d 36) (1981). The Bar notes that the considerations in imposing discipline for lawyer misconduct include the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors. See ABA Standard 3.0; *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996) (noting that this Court looks to the American Bar Association's standards for guidance in determining the appropriate

sanction to impose). It recites that both ABA Standards 4.12 and 4.42 state that a suspension is generally appropriate when a lawyer causes injury or potential injury to a client by knowingly dealing improperly with a client's property, knowingly failing to perform services for a client, or engaging in a pattern of neglect. The Bar does not dispute Matteson's asserted factors in mitigation, but notes in aggravation that Matteson's behavior suggests a pattern of misconduct, that he committed multiple offenses, and that he had substantial experience in the practice of law. See ABA Standard 9.22 (c), (d), and (i). The Bar notes that this Court has imposed similar discipline in other cases involving violations of the Rules implicated here. See, e.g., *In the Matter of Kirby*, 312 Ga. 341 (862 SE2d 550) (2021) (accepting petition for voluntary discipline and imposing a six-month suspension for attorney who admitted violating Rules 1.2, 1.3, 1.4, and 1.16 in four separate matters where attorney addressed his mental health and practice management problems); *In the Matter of Johnson*, 303 Ga. 795 (815 SE2d 55) (2018) (accepting petition for voluntary discipline and imposing a

six-month suspension, with conditions, for attorney who violated Rules 1.3, 1.4, 1.5, 1.15 (I), 1.16 (d) and 5.5 in separate client matters where attorney was suffering from personal and emotional problems at time of misconduct and had taken intervening efforts to improve himself and his law practice); *In the Matter of Huggins*, 291 Ga. 92 (727 SE2d 500) (2012) (accepting petition for voluntary discipline and imposing six-month suspension with conditions for reinstatement for violations of Rules 1.3, 1.4, 1.15, 1.16, and 9.3 in five client matters, where attorney had no prior disciplinary history and was receiving treatment for his personal issues). The Bar, therefore, recommends that the Court accept Matteson's petition and impose a six-month suspension.

This Court, however, has several concerns. First, although the Bar is correct that a suspension of six months could be commensurate with the discipline imposed in similar cases—at least where an attorney has provided proof of the mental health issues that allegedly contributed to his misconduct and his efforts to overcome those issues—in this case Matteson has not provided any

such proof. See *In the Matter of Kirby*, 304 Ga. 628 (820 SE2d 729) (2018) (rejecting petition for voluntary discipline seeking a reprimand in light of the pattern of misconduct, the multiple clients harmed, and the lack of any assurance that the issues that allegedly led to the attorney's misconduct had been resolved). Matteson also has not provided any evidence that his client's claims have been resolved in full, as he represents.[7] And, although Matteson stated in his petition that he had stepped away from the practice of law in 2019 as a result of his diagnosis, he once again has provided no proof of that fact and he makes no representations regarding whether he intends to return to the practice of law in the future and, if so, what steps he has taken to ensure that failures of the sort addressed herein will not reoccur. See *In the Matter of Hamer*, 300 Ga. 70, 72 (792 SE2d 707) (2016) (rejecting petition for voluntary discipline

---

[7] The Bar is silent as to Matteson's failure to provide this Court with proof of his allegations as to his mental health issues (and his management thereof) or his allegations that he has made his clients whole. Perhaps this silence is because the Bar has engaged in an investigation that confirms Matteson's representations, but we cannot assume so in the absence of such an assurance.

that failed to show, in relevant part, that respondent had taken sufficient steps to prevent additional violations of the GRPC). Finally, in a similar vein, we note that the proposed discipline contains no conditions whatsoever on Matteson's return to the practice of law following his suspension. Compare *In the Matter of McCall*, 314 Ga. 200 (875 SE2d 765) (2022) (rejecting petition for voluntary discipline but agreeing that the facts and the attorney's history of mental illness supported conditioning his reinstatement upon his demonstration to the Office of General Counsel that he is continuing to receive treatment and that he has been certified mentally fit to return to the practice of law through a board-certified and licensed mental health professional); *In the Matter of Moore*, 300 Ga. 407, 409 (792 SE2d 324) (2016) (conditioning reinstatement "upon [lawyer] providing a detailed, written evaluation by a licensed psychologist or psychiatrist certifying that he is mentally competent to practice law").

Accordingly, the petition for voluntary discipline is rejected.

*Petition for voluntary discipline rejected. All the Justices concur.*

Decided September 7, 2022.

Petition for voluntary discipline.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, Andreea N. Morrison, Assistant General Counsel State Bar*, for State Bar of Georgia.